The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Haigh. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award, except for the modification in Award Number One in which "August 5, 1991" is substituted for "May 5, 1991."
 ***********
Procedurally and substantively, this case involves an initially admitted compensable injury by accident on September 7, 1988 when plaintiff fell from his tractor trailer thereby injuring his back. Pursuant to a Form 21 Agreement which was approved by the Industrial Commission and thus constitutes an Award of record herein, defendants paid workers' compensation benefits to plaintiff for temporary total disability from September 10, 1988 through March 5, 1989. Pursuant to a Form 26 Agreement and Award, defendants paid benefits to plaintiff for 5% permanent partial impairment of his back. Thereafter plaintiff returned to his former profession of driving a truck in August 1989 but he had to quit in September 1989 because of increased pain which he experienced by reason of the injury by accident giving rise hereto.
By Opinion and Award filed April 2, 1992, Deputy Commissioner Haigh found and concluded that pursuant to the provisions of N.C. Gen. Stat. § 97-47 plaintiff had sustained a change of condition by September 15, 1989 which by reason of increased pain in his back, legs, hips, and shoulder as well as swelling of his legs and his pain developing into a chronic pain condition and the onset of significant depression rendered him totally disabled beginning September 15, 1989 and defendants were ordered to pay compensation continuing thereafter for so long as plaintiff remained totally disabled, provided that plaintiff fully cooperate with rehabilitation efforts offered by defendants which plaintiff was thereby ordered to do. That Opinion and Award was affirmed by the Full Commission in its' Opinion and Award filed January 28, 1993 and by the North Carolina Court of Appeals by a Rule 30 (e) decision filed November 2, 1993.
By Opinion and Award filed January 4, 1994, Deputy Commissioner Haigh found and concluded that plaintiff had failed to engage in a good faith reasonable effort to locate employment during the job search which began August 5, 1991 and he frustrated the vocational rehabilitation efforts of defendants to locate employment suitable to his capacity and that he was not entitled to workers' compensation benefits by reason thereof on or after August 5, 1991. That Opinion and Award was affirmed by the Full Commission's Opinion and Award filed August 24, 1994.
The foregoing 21 and 26 Agreements and Awards and the Opinion and Awards as well as the Court of Appeal's decision are otherwise incorporated herein by reference as are the parties' November 5, 1996 Pre-Trial Agreement and the documents stipulated into evidence thereby and by Mr. Prather's May 31, 1997 letter. The objections raised during the course of the depositions of Carswell, Deitz, and Keel-Mitchell are ruled upon in accordance with the law and the Opinion and Award entered in this case.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. While plaintiff was participating in the Work Recovery Center in May 1991 under the care of Dr. Stutesman, which at defendants' request, Deputy Commissioner Haigh by Order filed April 10, 1991 had directed plaintiff to do, Linda Squires, defendant carrier's workers' compensation manager over plaintiff's case, sent to plaintiff's counsel, Mr. Thomas Ramer, and a copy to defendants' counsel, Mr. B.T. Henderson, a letter dated May 13, 1991 wherein she requested that he have the attached Form 26 Agreement executed and returned to her. That Form 26 Agreement, which had not been signed by either defendant employer or defendant carrier, had typed on it, among other things, that plaintiff became totally disabled on May 5, 1991 due to the evaluation and treatment at the Work Recovery Center and that additional temporary total disability benefits were to begin May 5, 1991 and continue for various weeks. Attached to the letter was a check reflecting payment of temporary total disability benefits for the period from May 5 through May 11, 1991.
2. Plaintiff and his attorney thereafter executed the Form 26 Agreement and plaintiff's attorney returned it by letter dated May 21, 1995 to Mr. Henderson requesting that the Form 26 be submitted to the Industrial Commission for approval.
3. Mr. Henderson sent to the Deputy Commissioner, with a copy to plaintiff's counsel, a letter dated June 6, 1991 wherein he related, among other things, the following: that plaintiff was discharged by Dr. Stutesman from the Work Recovery Center on May 31, 1991; that a `"Dr. Herbert Frederick Johnson"`, who was not an authorized physician and who had not been licensed to practice medicine in North Carolina and was not on the inactive list of physicians according to the North Carolina Board of Medical Examiners, had according to the attached reports of rehabilitation specialist Frank Radford, interfered with the treatment directed by Dr. Stutesman and continued to do so; that plaintiff had advised Radford he intended to see a physician in Baltimore, Maryland, sometime after his June 7 appointment, which had been rescheduled, for possible surgery; that defendants were willing to offer vocational counseling to plaintiff to assist him in finding employment within the guidelines established by Dr. Stutesman but that plaintiff's insistence that he was going to see an unauthorized physician in Maryland, was going to not allow defendants' vocational rehabilitation services to assist him; that in view of all the foregoing, defendants requested an Order directing plaintiff to comply with the vocational counseling being offered to him, but that defendants were willing to recognize temporary total disability benefits so long as he was in compliance with vocational placement without waiving defendants' denial of plaintiff's pending claim for a change in condition.
4. However, because of the lack of evidence of record by way of stipulation, testimony, or depositions, no Order as requested by defendants was ruled upon by the Deputy Commissioner prior to issuance of the Deputy's Opinion and Award filed on April 2, 1992 which only adjudicated that plaintiff had sustained a change of condition as of September 15, 1989. As of the April 2, 1992 issuance date, there was a void of evidence of record upon which to rule with respect to whether plaintiff had failed to comply or cooperate with defendants' vocational efforts. Rather, that issue was ruled upon in the Deputy's Opinion and Award filed January 4, 1994 which was based upon the then evidence of record and which adjudicated that plaintiff was not entitled to workers' compensation benefits on or after August 5, 1991 because of his failure to cooperate with vocational rehabilitation efforts. Further, the evidence shows that from May 31, 1991 when plaintiff was discharged from Dr. Stutesman's program, until February 16, 1994 when he voluntarily underwent a work assessment at Foothills Industries, plaintiff made no effort to be reinstated in Dr. Stutesman's program or to enter any other vocational program, despite the mandate of the Deputy Commissioner's April 2, 1992 Opinion and Award.
5. Despite the absence of a ruling on defendants' June 6, 1991 letter requesting an Order directing plaintiff to comply with vocational rehabilitation offered by defendants and without the benefit of an Opinion and Award adjudicating the issue, defendants in good faith, nonetheless, voluntarily paid workers' compensation benefits to plaintiff for the period from May 5, 1991 through February 1, 1992 at which time they ceased payment. When made, those payments were not due and payable inasmuch as defendants had not admitted liability by signing the Form 26 for plaintiff's claim for an alleged change in condition and the Commission had not yet entered an Opinion and Award finding defendants liable for said claim and liable for a portion of those payments. Plaintiff's counsel should have been promptly notified that the Form 26 was not signed by defendants or sent to the Commission for approval.
6. In his letter dated February 26, 1992 to the Deputy Commissioner, with a copy to plaintiff's counsel, Mr. Henderson in response to plaintiff's February 24, 1992 Motion To Compel Payment of temporary total disability benefits, responded, among other things that: defendants never executed or submitted to the Industrial Commission for approval the Form 26 Agreement for payment of compensation benefits beginning May 5, 1991 because of, among other reasons, to do so might have prejudiced defendants' position still pending before the Commission for determination with respect to whether plaintiff had experienced a change in condition and that defendants had voluntarily paid workers' compensation benefits without an executed or Commission approved Form 26 Agreement; and that plaintiff's counsel had notice of this by Mr. Henderson's letter of June 6, 1991 and notice that benefits were being ceased by his letter of February 24, 1992. It was not until April 2, 1992 that an Opinion and Award was filed which addressed the issue of whether plaintiff had experienced a change in condition.
7. In retrospect and in view of the April 2, 1992 Opinion and Award, defendants paid workers' compensation benefits to plaintiff from August 5, 1991 through February 1, 1992 when they were not legally obligated to do so by an Opinion and Award or otherwise. They, thus, overpaid workers' compensation benefits for said period from August 5, 1991 through February 1, 1992.
8. Following the November 2, 1993 Court of Appeal's decision affirming the Full Commission's Opinion and Award of January 28, 1993 which affirmed the Opinion and Award filed by the Deputy Commissioner on April 2, 1992, defendants made payment of workers' compensation benefits on or about January 20, 1994 to plaintiff for the period from September 15, 1989 through August 4, 1991 as they were obligated to do pursuant to the Full Commission's Opinion and Award and the Court of Appeal's decision; however, they unilaterally without the consent of plaintiff or approval of the Industrial Commission, deducted from those benefits and took a credit for benefits paid to plaintiff for the period from May 5, 1991 through February 1, 1992. On January 4, 1994 the Deputy Commissioner filed an Opinion and Award which suspended plaintiff's right to worker's compensation benefits on and after August 5, 1991. Subsequent thereto, defendants did not offer to plaintiff any vocational rehabilitation services or medical attention.
9. On or about January 20, 1994, which was after issuance of the November 2, 1993 Court of Appeal's decision and the Deputy Commissioner's Opinion and Award filed January 4, 1994, Keel-Mitchell completed and forwarded to the Industrial Commission, with a copy to plaintiff's attorney and plaintiff, a Form 28B of the same date which form represented that, among other things, defendants had paid workers' compensation benefits to plaintiff pursuant to the Opinion and Award from September 15, 1989 through August 4, 1991, less attorney fees for plaintiff's counsel, and the Form 28B closed the case. Said form did not indicate that defendants had taken a deduction or credit for benefits paid in the amount of $12, 706.67 for the period from May 5, 1991 through February 1, 1992 which, in fact, they did deduct from the amount of benefits paid to plaintiff in January 1994.
10. Following issuance of the Deputy Commissioner's Opinion and Award on January 4, 1994, plaintiff voluntarily on his own motion sought the services of the McDowell County office of the North Carolina Department of Vocational Rehabilitation after which he was referred to a work evaluation at Foothills Industries, a workshop which is similar to Webster Enterprises, that being the one to which plaintiff had been referred in February 1992 by Philip Holder, a vocational specialist retained by defendants, but which plaintiff had refused to attend.
11. Plaintiff underwent a work assessment at Foothills Industries during the period of February 16, 1994 through March 14, 1994, which included an initial vocational assessment, a situational assessment, work stamina testing, and a work assessment consisting of performing manual labor activities. During the work assessment portion of the program plaintiff performed various manual tasks including putting together packages of screws, nuts, and washers, packaging nuts, bolts, and hardware knobs for a furniture manufacturer and folding medical drapes.
12. Plaintiff's physical capacities were observed by the Foothill's staff, which, together with plaintiff's testimony, establishes that plaintiff had severe, marked limitations of his functional abilities due to pain in his back, hips and shoulder, and swelling of his feet and hands.
13. Plaintiff repeatedly tried to continue his activities at the program. His attendance and punctuality were good, but due to increasing symptoms, including pain in his back, hips, and shoulder, as well as hives on his face and arms on occasion, he was never able to complete a full day of 6 hours.
14. Plaintiff's physical symptoms progressively worsened during the increased physical activities of the daily work. Due to his continuing and deteriorating condition, which was usually from his back, hips, and legs hurting, plaintiff was discharged from the Foothills work assessment program on March 14, 1994.
15. During plaintiff's participation in the program he was very motivated to work and tried his best. However, even the simplest tasks were difficult for him.
16. Due to plaintiff's age, 6th grade educational level with poor reading skills, and significant limitations of lifting up to 50 pounds occasionally, 40 pounds frequently, sitting and standing as needed for comfort, the only employment available in the employment market would require significant accommodations by employers, which would not be available to the public at large. Plaintiff, accordingly, does not have the potential for competitive employment on a sustained basis in even a part-time job.
17. Subsequent to his discharge from Foothills, plaintiff, nonetheless, again voluntarily sought vocational opportunities and located a job driving a truck with Dietz Motor Lines, with whom he had previously worked. He drove a truck for Dietz from September 7 through December 8, 1994, during which time he continually experienced increasing pain and discomfort in his back and legs. Due to his problems, his employer authorized plaintiff to hire a lumper, or assistant, to unload his truck. On one occasion, it took him over one week to drive to Arkansas whereas such a trip should have taken only 2 or 2 1/2 days. Plaintiff, however, had a lot of pain in his back, hips, and legs, as well as hives and swelling in his feet and ankles while enroute and had to stop and sleep in the sleeper cab. As a result of his increasing back pain, leg pain and hives, plaintiff voluntarily terminated his employment on December 8, 1994.
18. As a result of his compensable injury and the natural, direct, and proximate residuals thereof, including increased pain in his back and legs following a period of employment activity within his functional limitations, plaintiff has been unable to earn any wages in any employment since September 15, 1989 and continuing through the November 5, 1996 hearing, except for the period from September 7, 1994 through December 8, 1994. By reason of the aforementioned and plaintiff's age, education, work experience, and functional limitations, it would be futile for plaintiff to attempt vocational job placement activity. He is unable to obtain and maintain employment on even a part-time basis.
19. As of February 16, 1994, plaintiff engaged in a good faith and reasonable vocational efforts to locate employment when he began the work assessment at Foothills Industries upon a referral from the North Carolina Department of Vocational Rehabilitation. He has thereafter continued to engage in good faith and reasonable vocational efforts by seeking and obtaining employment but was unable to maintain said employment. After terminating that employment, he undertook to obtain employment but was unsuccessful.
20. Plaintiff, who had already been rendered and remained unable to earn wages in any employment due to the injury by accident giving rise hereto, was hospitalized for periods from several days to about a week on occasions in July, August, September, and December 1995 and in July 1996 for treatment of conditions, including diverticulitis, which are unrelated to the injury by accident giving rise hereto.
21. In view of plaintiff's continuing and increased pain resulting from the injury by accident giving rise hereto, it is reasonably medically necessary that he be examined and evaluated by an orthopedist and if so recommended by said physician, he should undergo treatment designed to effect a cure, give relief, or lessen his period of wage earning incapacity due to the injury by accident giving rise hereto.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The Opinion and Award filed by the Full Commission on August 24, 1994 was not a final award of the Commission within the purview of the provisions of N.C. Gen. Stat. § 97-47. Rather, under the provisions of N.C. Gen. Stat. § 97-25, the Opinion and Award constituted only a suspension of plaintiff's right to further workers' compensation benefits because of his failure to comply with the Order contained in the Opinion and Award filed by the Deputy Commissioner on April 2, 1992 (which was later affirmed by both the Full Commission and the Court of Appeals), which expressly cited and relied upon N.C. Gen. Stat. § 97-25 and which required plaintiff to cooperate with vocational rehabilitation efforts offered by defendants. Under the provisions of N.C. Gen. Stat. § 97-25, once plaintiff again complied with that Order and so long as he remained disabled, both of which occurred herein, his right to further workers' compensation benefits arose and the suspension thereof terminated. He, however, is not entitled to any benefits for the period of his unjustifiable refusal, that being from August 5, 1991 to February 16, 1994, during which he failed to seek reinstatement in Dr. Stutesman's program or to be admitted into any other vocational program. However, when plaintiff sought the vocational rehabilitation services of the North Carolina Department of Vocational Rehabilitation and Foothills Industries, and thereafter on his own sought and obtained employment instead of initially requesting defendants to again offer vocational rehabilitation services, he substantially complied with the Order and it's underlying purpose, thereby justifying the termination of the suspension of his benefits.
2. As a result of the injury by accident giving rise hereto, plaintiff has remained totally disabled since September 15, 1989 and continuing through November 5, 1996, the date of the last hearing before a Deputy Commissioner in this case, except for the period that he worked from September 7, 1994 through December 8, 1994. However, he is not entitled to any workers' compensation benefits for the period of his unjustifiable refusal to abide by the Order to cooperate with vocational rehabilitation efforts from August 5, 1991 to February 16, 1994. As of February 16, 1994 and continuing thereafter until it became fruitless and futile to continue, he engaged in good faith vocational rehabilitation efforts and job searches. He, accordingly, is entitled to compensation at the rate of $327.01 per week for the period from February 16, 1994 to September 7, 1994 and from December 9, 1994 through November 5, 1996 and continuing thereafter for so long as he remains totally disabled, subject, however, to a credit in the amount of and for the period determined herein below. N.C. Gen. Stat. § 97-2 (9); N.C. Gen. Stat. § 97-25; N.C. Gen. Stat. § 97-29; and N.C. Gen. Stat. § 97-42.
3. At the time defendants made payments beginning in May 1991 to plaintiff of workers' compensation benefits at the rate of $327.01 per week for the period from May 5, 1991 through February 1, 1992, they had not admitted liability and no determination by the Commission had been made with respect to their liability, if any, for said period of time. Rather, that determination was only made in November 1993 when the Court of Appeals issued its decision and when the August 24, 1994 Opinion and Award was issued by the Full Commission. Thus, those payments were "not due and payable when made" within the meaning of the provisions of N.C. Gen. Stat. § 97-42. In view of the contents of the June 6, 1991 letter and the February 26, 1992 letter from defendants' counsel, defendants had reasonable basis for not signing the Form 26 after it was returned to them. Under all the circumstances, defendants were not obligated to sign the Form 26 "Agreement" when they did not agree to its terms by the time they received it with plaintiff and his attorney's signatures thereon. In this regard, Industrial Commission Rule 501 (7) now provides that upon receipt of a memorandum of agreement (such as a Form 26 Agreement) which has been signed by the employee and attorney if any, the defendants only have 20 days within which to submit it to the Industrial Commission for review and approval or within which to show good cause for not submitting the agreement signed only by the employee. This subsection of Rule 501 was not effective until March 15, 1995 and accordingly it is not applicable to the case herein. Instructively, that subsection recognizes that situations can develop between the time a form agreement is submitted to an employee for signature and the time that the employer receives the signed agreement that would justify the defendants not then signing the agreement. Such a situation was presented in the instant case.
Under all the circumstances in this case and balancing the equities herein, including plaintiff's unjustifiable refusal to abide by the Commission's Order to cooperate with vocational rehabilitation services and defendants having paid vocational rehabilitation expenses incurred during plaintiff's period of refusal, the undersigned in their discretion hereby conclude that defendants, despite initially taking a credit unilaterally without Commission approval which they should have obtained, are entitled to a credit in the amount of $327.01 per week for the period from May 5, 1991 through February 1, 1992. To disallow said credit to defendants would defeat the purpose of N.C. Gen. Stat. § 97-42, to wit: to encourage voluntary payments to an employee while the claim to compensation is being disputed and while he is not receiving wages. N.C. Gen. Stat. § 97-42 andEvans v. AT T Technologies, 103 N.C. App 45 (1991).
4. Defendants are responsible for medical compensation incurred and to be incurred by plaintiff for treatment of the injury by accident giving rise hereto. Moreover, defendants are responsible for the costs of an examination, diagnostic testing, and evaluation of plaintiff by an orthopedist of his selection and any treatment recommended by said physician in order to effect a cure, give relief, or which tends to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-2 (19) and N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to counsel fee hereinafter approved, defendants shall pay compensation to plaintiff at the rate of $327.01 per week from February 16, 1994 to September 9, 1994 and from December 9, 1994 and continuing thereafter for so long as he remains totally disabled, subject, however, to a credit to which defendants are entitled to in the amount of $327.01 per week for the period from August 5, 1991 through February 1, 1992. As much of said compensation as has accrued, shall be paid in a lump sum without commutation.
2. A reasonable attorney fee in the amount of twenty-five percent of the benefits payable pursuant to the terms of this Opinion and Award is hereby awarded for plaintiff's counsel. Said attorney fee shall be deducted from the accrued and the benefits which hereafter accrue and shall be paid directly to his attorney.
3. Defendants shall pay, in such amounts and in such manner as by procedures of the Commission allows, medical compensation incurred or to be incurred by plaintiff for treatment of the injury by accident giving rise hereto. It is hereby Ordered that plaintiff present himself to an orthopedist selected by him in order to undergo an examination, diagnostic testing, evaluation, and treatment recommended, if any, by said physician for treatment of the injury by accident giving rise hereto and that defendants shall pay the costs thereof.
4. Defendants shall pay the costs.
 ORDER
In the discretion of the Full Commission, plaintiff's motion for attorney fees is hereby, DENIED.
This ___ day of August 1998.
 S/ _____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _____________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________ RENEE RIGGSBEE COMMISSIONER
DCS/bjp